FILED
03 NOV 25 PM 3:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
NOV 2 5 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

DONALD SWAIN,

 Plaintiff,

v.

BULL'S BUILDING SUPPLY,

 Defendant.

CIVIL ACTION NO.
02-AR-3025-J

### MEMORANDUM OPINION

Before the court is the motion of defendant, Bull's Building Supply ("BBS"), for summary judgment. Plaintiff, Donald Swain ("Swain"), invokes 42 U.S.C. § 1981, claiming hostile work environment and disparate treatment.[1]

### Summary Judgment Facts

Swain, who is black, began working for BBS as a stocker on August 17, 2001. Although Swain himself never heard any racial slurs in the workplace, it is admitted that one or more of the managers referred to another black employee, Mike Hagler, as "black Mike" on BBS's intercom system. Bobby Bull, the white vice-president of BBS who hired Swain, fired him on May 1, 2002.

---

[1] In the factual recitation of Swain's opposition brief, he effectively concedes his hostile work environment claim stating, "this is not sufficient to rise to [the] level of a hostile environment." (Doc. #13 at 2). Likewise, Swain's argument solely addresses his April 30, 2002 termination -- a disparate treatment claim. BBS is therefore clearly entitled to summary judgment on Swain's hostile work environment claim.

During his nearly nine-months of employment, Swain had been reprimanded for tardiness and deficient work performance. A white employee replaced Swain.

On January 18, 2002, Swain and two white stockers, Barry Anthony and Brian Manasco, attended a meeting set up to discuss what BBS saw as their unsatisfactory performances. Bull and two other supervisors, Leonard Pendley, who is white, and Luther Shepherd, who is black, attended the meeting. Shepherd made a list of ten areas in which the performance of the three employees needed improvement. Swain, Anthony, and Manasco all signed the list and acknowledged their various deficiencies. Anthony later quit, and Manasco's performance improved. Swain's performance did not improve sufficiently to meet BBS's expectations.

Bull, Pendley, and Shepherd met with Swain on two more occasions to discuss Swain's performance. These meetings occurred during February and March 2002. Then, in April 2002, Swain had two unexcused absences.

On April 3, 2002, Swain was called in to account for his absence on April 2. He claimed to have had car trouble. When co-workers asked him about the meeting, Swain claimed to have received a raise. Swain told Jan Justice, another white stocker, of the fictitious raise. Ms. Justice's husband, Joe Justice, also worked for BBS and allegedly knew of Swain's joke. Hearing that Swain had received a raise upset Ms. Justice because she had

completed some of Swain's work for him "to help keep him from getting fired." She received no raise. (Doc. #11 Ex.7). Bull broke the news to Ms. Justice that Swain had not received a raise.

On April 28, 2003, BBS held its "annual crawfish day." Employees are required to assist in cleaning up after this annual event. On the workday immediately following the event, Pendley met with Swain, Anthony, Manasco, and Ms. Justice. He reprimanded them for "leaving early." Swain believed Pendley was overly harsh toward Ms. Justice. Shortly thereafter, Mr. Justice asked Swain what had occurred, and Swain told Mr. Justice that "Leonard was hollering at your wife, screaming and hollering at your wife" and made her cry. After hearing this, Mr. Justice confronted Pendley in a threatening manner. Pendley was reprimanded for his behavior.

Swain was absent again on April 30, 2003. This was not a contributing factor to the adverse employment decision because Bull had already decided to fire Swain. Bull concluded that Swain's performance had not improved, his absences had continued, and he was causing problems with other employees. Specifically, Bull believed Swain had incited Mr. Justice, and that the incident involving Ms. Justice was the last straw.

## **Analysis**

A plaintiff establishes a *prima facie* case of disparate

treatment under 42 U.S.C. § 1981 in same manner as under Title VII. *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 843 n.11 (11th Cir. 2000) (stating that "[t]he elements of a claim of race discrimination under 42 U.S.C. § 1981 are also the same as a Title VII disparate treatment claim in the employment context."). Therefore, a plaintiff must establish: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse job action; and (4) he was replaced by a person outside the protected class or treated less favorably than a similarly situated individual outside his protected class. *Maynard v. Bd. of Regents of the Univ. of Florida*, 342 F.3d 1281, 1289 (11th Cir. 2003). BBS challenges Swain's attempted use of Manasco and Mr. Justice as comparators.

To determine whether two employees are similarly situated, "it is necessary to consider whether the employees are involved in or accused of the same or similar conduct." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). In this regard, the Eleventh Circuit requires that "the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Maniccia v. Brown*, 171 F.3d 1364, 1368-9 (11th Cir. 1999). Neither Manasco nor Mr. Justice fits this bill. There is no evidence that Manasco or Mr. Justice failed to correct performance deficiencies after receiving a

warning or engaged in disruptive behavior in the workplace. Although Manasco had been reprimanded along with Swain on two occasions, it is undisputed that Manasco's performance was improving, while Swain continued to receive reprimands for poor performance and absenteeism. Likewise, there is no evidence that Mr. Justice was ever involved in an event requiring disciplinary action other than his confrontation with Pendley. Swain has failed to prove the existence of a sufficiently comparable employee outside his protected class to travel the less favorable treatment route to a § 1981 violation. Swain has established his *prima facie* case, however, with the undisputed evidence that a white employee was his replacement.

BBS can rebut Swain's *prima facie* case by producing evidence of a legitimate, nondiscriminatory reason for his termination. At this stage, BBS has only the "exceedingly light" burden of production. *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994). As the Supreme Court has emphasized, Swain retains at all times the burden of persuading the trier of fact that BBS intentionally discriminated against him. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993). Swain's task of imputing discriminatory animus to BBS is made more difficult by the fact that Bull both hired and fired Swain. *Williams v. Vitro Serv. Corp.*, 144 F.3d 1438, 1443 (11th Cir. 1998) (holding that a permissible inference that no discriminatory animus motivate the

employer is appropriate where the same actor is responsible for both hiring and firing the employee).  Swain has not provided evidence upon which a reasonable factfinder could find that BBS's legitimate, nondiscriminatory reasons for firing him were a pretext.

BBS contends that it fired Swain for poor performance, unexcused absences, and causing disruption in the workplace. Swain admits acknowledging a list of his deficiencies at the January 18, 2002 meeting -- approximately three months before being fired.  Swain was counseled on his failures on several occasions, even after the January 2002 meeting, but his poor performance and absences continued.  Additionally, Swain disrupted the workplace on at least two occasions.  Swain's own admissions preclude him from contending that these legitimate, nondiscriminatory reasons were a pretext.

In a lame attempt to prove pretext, Swain relies on the fact that Pendley yelled at Ms. Justice and caused her to cry. He argues that the other people involved in this incident were not fired, effectively challenging Bull's conclusion that Swain instigated the confrontation by exaggerating Pendley's behavior when Mr. Justice asked about the meeting.  Federal courts do not sit as "super-personnel department[s]" to adjudge whether an employer's decision is prudent or fair.  *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000).  An employer can fire an

employee for any reason or no reason, provided it does not fire the employee for a discriminatory reason. *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984). Swain's attempt to limit the inquiry into Bull's decision to the Pendley/Justice confrontation is ineffectual. Swain must present substantial evidence that **each** and **all** of Bull's articulated reasons are pretextual. *Combs v. Plantation Patters/Meadowcraft, Inc.*, 106 F.3d 1519, 1543 (11th Cir. 1997). Swain has failed in this undertaking. Accordingly, BBS's motion for summary judgment will be granted by separate order.[2]

DONE this 25th day of November, 2003.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

---

[2] Because the court finds summary judgment appropriate for the reasons articulated above, BBS's argument that Swain's bankruptcy petition precludes his discrimination claim need not be addressed.